**Hernan GAZTAMBIDE–BARBOSA, et al., Plaintiffs, Appellees,**

v.

**Jaime TORRES–GAZTAMBIDE, etc., et al., Defendants, Appellants.**

No. 89–1858.

United States Court of Appeals, First Circuit.

Heard March 5, 1990.

Decided April 20, 1990.

Carlos Del Valle with whom Hector Rivera Cruz, Secretary of Justice, Jorge E. Perez Diaz, Sol. Gen., and Ramirez & Ramirez, Hato Rey, P.R., were on brief, for defendants, appellants.

Frank Rodriguez Garcia, Ponce, P.R., for plaintiffs, appellees.

Before BREYER and TORRUELLA, Circuit Judges, and RE,* Judge.

BREYER, Circuit Judge.

In March 1985 the two defendants in this case (Puerto Rico's Secretary of Housing and the Executive Director of its Housing and Urban Development Corporation, "CRUV") dismissed the plaintiff from his position as one of CRUV's Regional Directors; they also dismissed him from the agency. The plaintiff sued them in federal court, and eventually conceded that defendants had the legal power to remove him from the policy-making, "trust or confidence" civil service position of Regional Director. *See Jimenez–Fuentes v. Torres–Gaztambide,* 807 F.2d 236, 246 (1st Cir. 1986) (en banc), *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987). The plaintiff pointed out, however, that he had held a "career" civil service position in Puerto Rico's Office of Youth Affairs before he became a Regional Director at CRUV. He claimed that the defendants violated both the First and Fourteenth Amendments to the federal Constitution when, instead of finding him another equivalent "career" position, they dismissed him outright from the agency. He asked the court to award him damages, as well as reinstatement to a career position similar to the one he had held before.

The defendants moved for summary judgment. They pointed out that the law entitles them to assert "qualified immunity"—an immunity from suit for damages—unless they violated "rights" that "were clearly established at the time of the conduct at issue." *Davis v. Scherer,* 468 U.S. 183, 197, 104 S.Ct. 3012, 3021, 82 L.Ed.2d 139 (1984); *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982). They said that federal law in 1985 did not offer the plaintiff legal protection (against outright dismissal) that was "sufficiently clear that a reasonable official would [have understood] that what he [was] doing violate[d]" the federal law. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987). The district court held to the contrary, and the defendants now bring an "interlocutory appeal" from its denial of "qualified immunity." *See Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985) (district court's denial of claim of qualified immunity is immediately appealable despite absence of final judgment); *De Abadia v. Izquierdo–Mora,* 792 F.2d 1187, 1190 (1st Cir.1986) (denial of qualified immunity is immediately appealable even where suit also seeks injunctive relief).

The defendants accept the legal facts that the Fourteenth Amendment requires governments to provide "due process" to permanent employees whom they wish to dismiss, *see Board of Regents v. Roth,* 408 U.S. 564, 576–77, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), and that the First Amendment protects employees from dismissal for reasons of "political affiliation," except where such affiliation is an appropriate requirement of the job. *See Branti v. Finkel,* 445 U.S. 507, 517–19, 100 S.Ct. 1287, 1294–95, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 372–73, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976) (plurality opinion). They also accept the fact that the plaintiff held a "career" civil service posi-

* The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

tion in Puerto Rico's Office of Youth Affairs before he accepted the job of housing Regional Director. They concede, as they must, that Puerto Rico's civil service law explicitly says:

> Every regular employee in a career position who is appointed to a confidential position shall be entitled to be reinstated in a position equal or similar to the last one he held in the career service.

P.R.Laws Ann. tit. 3, § 1350. Finally, they concede that, if Puerto Rico's law clearly entitled plaintiff to a "career" position, they could not remove him without "due process" or for political reasons. Nonetheless, they argue that the law did *not clearly* entitle the plaintiff to a career position in Puerto Rico's civil service; that is to say, once removed from his "trust" position, plaintiff did not (under Puerto Rico's law) clearly hold any other position in the government. Hence, the law did not *clearly* forbid the defendants to remove him outright (for political reasons or without "due process") from government service. The defendants make three arguments.

■ 1. Defendants say that Puerto Rico's law did not clearly retain plaintiff in a career position because the law is unclear about whether or not § 1350, quoted above, applies to a governmental entity like CRUV, which Puerto Rico's law calls a "public corporation." *See* P.R.Laws Ann. tit. 3, § 441e. They argue that such a corporation, exempt from various personnel law requirements prior to 1976, became an "Individual Administrator" under the Personnel Act of 1975, *see* P.R.Laws Ann. tit. 3, § 1343, and that Puerto Rico's law does not require "Individual Administrators" to follow the "reinstatement rule" that § 1350 contains. Their evidence for this legal proposition consists of a sentence found in another section of the law, which says that

> Individual Administrators shall adopt for themselves regulations with regard to the areas essential to the merit principle, *which shall be in keeping with the provisions of sections 1331–1337* of this title.

P.R.Laws Ann. tit. 3, § 1347(1) (emphasis added). They add that "sections 1331–1337" do not contain the "reinstatement rule," which is codified at § 1350 of the same title. And they say that the "reinstatement rule" is not, in any obvious way, an absolutely essential part of the "merit principle." *See Estrada–Adorno v. Gonzalez*, 861 F.2d 304, 307 (1st Cir.1988).

Were there no other indication of the meaning of Puerto Rico's law, we might agree that its application to plaintiff's case was unclear. But several other features of the law, and its application by Puerto Rico's government, clarify any lurking ambiguities. First, the very section of the Personnel Act that the defendants quote, § 1347, explicitly says that each Individual Administrator "shall ... submit[ ]" its regulations "to the [Central Office of Personnel Administration] for approval." Pursuant to this section, CRUV submitted to the Personnel Office for approval, and obtained approval of, a regulation that embodied the "reinstatement principle." CRUV's own regulation says:

> If a career employee with a regular status is designated in a trust and confidence position from which he is later removed, he will have the right to be reinstated to a position equal or similar to the one he occupied in the career service when he was shifted to the trust and confidence position. The Corporation [i.e. CRUV] will manage the reinstatement of the employee in any one of its programs and if this is not feasible, in other governmental agencies.

C.R.U.V. Personnel Rules and Regulations § 4.5.

Second, in 1982 the Director of the Central Office of Personnel Administration, in a letter issued "pursuant to ... the Act," and addressed, in part, to "Directors of Public Corporations" (such as CRUV), wrote:

> *Reinstatement of Trust Employees*
>
> Whenever a trust employee is separated from his position and prior to rendering services in the trust service he held a career position with a regular status, he will have the absolute right to be rein-

stated to a position equal or similar to the last one he occupied in the career service. The responsibility for reinstating the employee will belong to the agency from which he was separated, which must exhaust all remedies to reinstate the employee in any of its programs or in other agencies of the personnel system. This letter says directly that § 1350's "reinstatement rule" applies to CRUV.

Third, when the two defendants wrote their joint letter to the plaintiff, dismissing him from the agency, they said:

Pursuant to the powers vested in me by Law Number 5 of October 4, 1975, as amended, known as the Public Service Personnel Act, which in *Section 5.10* [*codified at* P.R.Laws Ann. tit. 3, *§ 1350*] says that "employees in positions of trust shall be of free selection and removal" I hereby inform you that from March 20, 1985 on, I will no longer be requiring your services.

(Emphasis added.) Thus, in dismissing the plaintiff, the defendants appealed, as their legal authority, to the very section of the law, namely § 1350, that contains (two sentences later) the "reinstatement rule."

Fourth, in prior cases in which the same government officials have dismissed Regional Directors of CRUV from their positions, "they transferred [them] ... to the[ir] previously-held positions at CRUV." *Jimenez–Fuentes v. Torres–Gaztambide,* 807 F.2d at 238, 246 n. 11.

Given these indications in the briefs and in the record about the meaning of Puerto Rico's law, it seems to us that § 1350, which contains the "reinstatement rule," applies to CRUV, and that this legal fact was or should have been clear to CRUV officials at the time of plaintiff's dismissal. Thus, this case is very different from the case of *Estrada–Adorno, supra,* to which defendants look for support, for the applicability of Puerto Rico's personnel law to the agency in *Estrada–Adorno* was far less clear. The plaintiff in *Estrada–Adorno* was dismissed from her position in Puerto Rico's Development Bank. That Bank is not a "public corporation." Rather, it is a "government agenc[y] or instru-

mentalit[y] of government operating as [a] private enterprise[ ]," P.R.Laws Ann. tit. 3, § 1338, and the Personnel Act itself explicitly says that the provisions relevant here (i.e., § 1350) "shall not apply" to such agencies.

■ 2. The defendants also argue that, under Puerto Rico's law, the "reinstatement rule" does not grant a right of reinstatement to an employee who held a "career position" in one agency and a "trust and confidence" position in another agency. At least, they say, it is not "clear" that it does apply. To support this position, however, defendants can do no more than point to the fact that the statute does not contain language that *explicitly* says it *does* apply in such circumstances. We should ask, however, what reason there is for thinking the statute does *not* apply. What sense would the statute make, how much protection would it offer, were it inapplicable whenever a civil servant moved among (rather then simply within) the many individual agencies that comprise the Commonwealth's government? Indeed, the second sentence of the Personnel Management letter quoted above (the sentence that gives "responsibility" for reinstatement to the "agency" where the employee held the "trust" position) would make no sense were "interagency circumstances" not foreseen. We cannot find significant ambiguity in the law in this respect.

■ 3. Finally, the defendants argue that *federal* law was unclear, in that it did not clearly protect the plaintiff's right to be *hired.* Defendants again point to *Estrada–Adorno,* where we said that federal law did not clearly require state authorities to avoid "political" criteria in *hiring, see* 861 F.2d at 305, and that it did not clearly forbid dismissing a personnel director because she refused to apply such *hiring* criteria. *Id.* at 307. This case, however, is not about *hiring.* It is about a dismissal from the government. The refusal to find plaintiff a different position within the same agency amounted, functionally, to a dismissal from the agency. The Common-

wealth statute in question does not speak of "hiring" or "rehiring" a "trust" employee in a "career" position. Rather, it speaks of "reinstatement" (and the Spanish word, *"reinstalación,"* suggesting something like "reinstallation," is even further removed from the notion of "hiring"). An outright dismissal and a failure to transfer that has the same effect would seem too similar, in the circumstances before us, to have reasonably suggested a significant difference in the application of federal constitutional law.

Since the district court simply denied a motion for summary judgment on the issue of qualified immunity, the defendants will have an opportunity to present further evidence on the question at trial. *See Hernandez–Tirado v. Artau,* 835 F.2d 377, 379 (1st Cir.1989). But on the basis of the record now before us, that denial must be

*Affirmed.*

### APPENDIX

Puerto Rico Public Service Personnel Act, P.R.Laws Ann. tit. 3, §§ 1301–1431

§ 1311

(2) To the end of assuring the extension and strengthening of the merit principle to all sectors of the Puerto Rican public service, *all* public employees, whether they are commonwealth or municipal employees with the exception of those excluded in section 1338 of this title, shall be covered by *a single personnel system,* established to enforce the merit principle, which shall be known as the Public Service Personnel System....

(4) The Personnel Administration System shall be divided into the Central Administration ... and the Individual Administrators mentioned in [§ 1343 of] this chapter. (Emphasis added.)

§ 1338

The provisions of this chapter shall not apply to the following government branches, agencies and instrumentalities:
....

(3) Employees of government agencies or instrumentalities operating as private enterprises or businesses....

§ 1343

The following agencies shall be Individual Administrators: ...

(3) Every agency included by special law in the exempt or noncompetitive service, pursuant to the provisions of Act No. 345 of May 12, 1947, as amended, known as the Personnel Act, or of special laws.

§ 1347

(1) The Individual Administrators shall adopt for themselves regulations with regard to the areas essential to the merit principle, which shall be in keeping with the provisions of sections 1331–1337 of this title. They shall also include all those areas concerning personnel which, even though they are not essential to the merit principle, are necessary to achieve a modern and equitable administration system, and will help to expedite the application of the merit principle.

The regulations of each Individual Administrator shall be submitted to the Office for approval.

§ 1349

There shall be two services: career and confidential.... The Director shall issue the general standards that will govern the confidential service personnel administration *throughout the Personnel System* [i.e., the system defined by § 1311(4) as including Individual Administrators]. (Emphasis added.)

§ 1350

Confidential employees shall be of free selection and removal....

Every regular employee in a career position who is appointed to a confidential position shall be entitled to be reinstated in a position equal or similar to the last one he held in the career service.