**Hernan GAZTAMBIDE BARBOSA, Plaintiff,**

v.

**Jaime TORRES GAZTAMBIDE, et al., Defendants.**

**Civ. No. 85–1114.**

United States District Court, D. Puerto Rico.

Aug. 30, 1991.

---

**54**

Frank Rodríguez García, Ponce, P.R., for plaintiff.

José A. Sánchez Alvarez, Ramirez & Ramirez, Hato Rey, P.R., for defendants.

## OPINION AND ORDER

GIERBOLINI, Chief Judge.

Before the court are motions for summary judgment filed by the parties. The issue is whether plaintiff is entitled to be reinstated to his alleged career position pursuant to Puerto Rico's Public Service Personnel Act (the "Personnel Act"), 3 L.P.R.A. § 1301 *et seq.*

### I. BACKGROUND

A brief sketch of the lengthy, tortuous history of this case is necessary to understand how presumptuous is defendants' new argument in favor of summary judgment. For the past five years in pleadings before this court and the First Circuit, defendants have admitted as a "fact" that plaintiff's former position as Interagency Coordinator IV of the Office Of Youth Affairs was a career position as defined by the Personnel Act. In their latest motion for summary judgment, however, the defendants have rejected this alleged "fact" by arguing that plaintiff's former position is a confidential one, or alternatively, that his appointment to this career position was null and void.

Under Puerto Rico's Personnel Act, a "career" employee may be discharged only for just cause while an employee in a "trust or confidential" position may be discharged at will. 3 L.P.R.A. § 1350.[1] In March 1985, plaintiff was dismissed from his position as one of the

---

1. *Cf. Jiménez–Fuentes v. Torres–Gaztambide,* 807 F.2d 236, 241–42 (1st Cir.1986) (en banc), *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987) (classification of position as a trust or career one is one factor to consider in determining whether an employee may be dismissed for political reasons).

Regional Directors of the Housing and Urban Development Corporation of Puerto Rico ("CRUV"). Before he held this position at CRUV, plaintiff was a "career" employee in the Office of Youth Affairs. Plaintiff brought suit claiming that the defendants violated both the first and fourteenth amendments of the U.S. Constitution when they failed to reinstate him to a "career" position.[2] Under Section 1350 of the Personnel Act, a career employee is entitled to reinstatement to a career position equal or similar to the one he held prior to his dismissal. Plaintiff sought damages under state and federal law as well as reinstatement to a career position alleging that the sole reason for defendants' failure to reinstate him was his political affiliation. Plaintiff is a member of the Partido Nuevo Progresista and he alleges that defendants are members of the Partido Popular Democrático.

Initially, the defendants moved for summary judgment arguing that they were entitled to qualified immunity because in 1985 the law was not sufficiently clear that a reasonable public official would have understood that dismissing plaintiff violated federal law. *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Rodríguez v. Muñoz*, 808 F.2d 138, 142 (1st Cir.1986) ("The question is whether defendant should have reasonably known when he discharged [plaintiff] that the *federal* law was clearly established against his action."). We rejected that contention by holding that although plaintiff's dismissal as Regional Director did not violate federal law, since that position is a confidential one, a genuine issue of material fact exist-

ed as to whether the defendants' failure to reinstate plaintiff was due to political reasons.[3] (Opinion and Order, July 13, 1989). We also found that

> [b]efore plaintiff obtained his job in CRUV, he held a career position as an Interagency Coordinator IV in the Office of Youth Affairs for the Commonwealth of Puerto Rico.

(Opinion and Order at 5). The defendants appealed. In affirming our denial of qualified immunity, the First Circuit noted that the defendants accepted

> the fact that the plaintiff held a "career" civil service position in Puerto Rico's Office of Youth Affairs before he accepted the job of housing Regional Director.

*Gaztambide–Barbosa v. Torres–Gaztambide*, 902 F.2d 112, 113–14 (1st Cir.1990).

## II. DISCUSSION

On November 1, 1990, plaintiff moved for partial summary judgment arguing that pursuant to Section 1350 of the Personnel Act he was entitled to reinstatement to a career position equal or similar to the one he held prior to this dismissal. Section 1350 of the Personnel Act provides

> Every regular employee in a career position who is appointed to a confidential position shall be entitled to be reinstated in a position equal or similar to the last one he held in the career service.

In 1982, the Director of the Central Office of Personnel Administration implemented the mandate of Section 1350 as follows:

> Whenever a trust employee is separated from his position and prior to rendering

---

**2.** Originally, plaintiff asserted that the defendants could not remove him from the position of Regional Director of CRUV. He abandoned this claim, however, when the First Circuit held in *Jiménez–Fuentes v. Torres–Gaztambide, supra,* that party affiliation was an appropriate requirement for the position of Regional Director.

**3.** We note that in our Opinion and Order we stated that plaintiff had waived his right to assert a due process claim. However, this statement referred only to the limited holding that

plaintiff's *dismissal from CRUV* did not violate due process. We did not mean to imply that plaintiff had waived his right to assert that the *defendants' failure to reinstate him* violated due process. Indeed, the First Circuit (and the defendants) recognized that plaintiff's due process claim was preserved. *See Gaztambide–Barbosa v. Torres–Gaztambide*, 902 F.2d 112, 114 (1st Cir.1990) ("[The defendants] concede that, if Puerto Rico's law clearly entitled plaintiff to a "career" position, they could not remove him without "due process" or for political reasons.").

services in the trust service he held a career position with a regular status, he will have the absolute right to be reinstated to a position equal or similar to the last one he occupied in the career service. The responsibility for reinstating the employee will belong to the agency from which he was separated, which must exhaust all remedies to reinstate the employee in any of its programs or in other agencies of the personnel system.

Inasmuch as Section 1350 directs that plaintiff be reinstated, the defendants now assert that plaintiff's former position at the Office of Youth Affairs, Interagency Coordinator IV, was a confidential position, or alternatively, that plaintiff's appointment was null and void. Confidential employees are defined as

those who intervene or collaborate substantially in the formulation of the public policy, who advise directly or render direct services to the head of the agency ...

3 L.P.R.A. § 1350.

Under *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the defendants have the burden of demonstrating "that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.* at 518, 100 S.Ct. at 1295. The defendants argue that political affiliation is an appropriate requirement for the position of Interagency Coordinator IV.

In *Jiménez–Fuentes v. Torres–Gaztambide*, 807 F.2d 236 (1st Cir.1986), *cert. denied*, 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987), the First Circuit set forth a test to decide whether a particular government position is excepted from First Amendment protection. The *Jiménez–Fuentes* test has been summarized as follows:

First, does the position implicate partisan interests? If so, do the inherent responsibilities and duties of that position make political affiliation an appropriate job requirement. *See* [807 F.2d at 242] Although we have resisted right use of labels, this second step has generally focused on whether the position involves

"policymaking, access to confidential information, communications, or similar functions for which party loyalty is an appropriate requirement."

*Romero–Feliciano v. Torres–Gaztambide*, 836 F.2d 1, 3 (1st Cir.1987) (citing *Collazo–Rivera v. Torres–Gaztambide*, 812 F.2d 258, 261 (1st Cir.1987)).

The job classification for the position of Interagency Coordinator IV lists the following duties:

1) Representing the Executive Director at the regional level.

2) Implementing, under the supervision of the Director of the Field Operations Division, the public policy of the Youth Affairs Office at the regional level.

3) Directing and supervising the duties of his subordinates or the personnel under his charge.

4) Planning, organizing, executing and evaluating activities originating at the central level and by personal initiative geared to helping youth.

5) Promoting and fostering the participation of youth in the activities at the level of the regional office.

6) Responsible at the regional level for all the organization needed to celebrate activities and/or meetings.

7) Responsible for preparing the fifteen day or monthly reports and any other kind of report which may be required by the central level.

8) Holding periodic meetings with personnel to ensure the best operation of his region.

9) Coordinating with the pertinent government office all matters and tasks which are received from the Central Office.

10) Coordinating at the interagency level all services geared to orienting and helping a youth.

11) Participating every month in the meetings called by the Executive Director and/or the Assistant Director.

12) Performing any other function which may be assigned by the central level.

Assuming the first step of the *Jiménez–Fuentes* two-step inquiry, namely that the

Interagency Coordinator IV position is "substantially related" to partisan political concerns, we note that the particular responsibilities bestowed upon the coordinator appear to support a finding that it is not protected from political patronage dismissal.[4] The duties of the Interagency Coordinator IV are very similar to the duties of other position for which the First Circuit has found party loyalty to be an appropriate requirement. *See, e.g., Jiménez–Fuentes,* 807 F.2d at 244–245 (Regional Director of Puerto Rico Urban Development and Housing Corporation); *Collazo–Rivera v. Torres–Gaztambide,* 812 F.2d 258 (1st Cir.1987) (Regional Director of Rural Housing Administration).

Alternatively, defendants argue that even if we were to hold that the position of Interagency Coordinator IV is a career position, plaintiff's appointment to it was null and void.

■ However, we decline to evaluate conclusively the merit of these arguments because we find that defendants have waived them. In the answer to the complaint, and in the pleadings before this court[5] and the First Circuit,[6] defendants stipulated that as Interagency Coordinator IV, plaintiff held a career position. We are at a loss to understand why the defendants are raising what seems to be a major component of their defense arsenal almost six years after the commencement of this litigation. As commentators have noted

Courts generally hold stipulations, agreements, of statements of counsel made at

the pretrial conference binding for purposes of the trial. This practice furthers the Rule 16 policy of limiting the trial to those issues that are actually in dispute without impairing the basic rights of the litigants.

6A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1527, at 263–64 (1990).

■ We are aware that the final pretrial conference in this case, scheduled for December 12, 1990, was postponed pending the disposition of the motions for summary judgment. We note also that Rule 16(e) recognizes pre-trial orders may be "modified by a subsequent order." F.R.Civ.P. 16(e). Furthermore, the trial court has discretion to disregard stipulations of fact. *See, e.g., Hultgren v. County of Lancaster,* 753 F.Supp. 809, 812 (D.Neb.) (in an action under the Fair Labor Standards Act stipulated hiring date would be disregarded in light of the evidence admitted at trial), *aff'd in part,* 913 F.2d 498 (8th Cir.1990). In this case, however, the defendants have not requested relief from the conclusive effect of the stipulations nor have they explained the reason for not asserting these arguments, although they were in possession of sufficient information to make them.[7] Although the court has the right to relieve counsel and/or his client from any statement or stipulation made during the pretrial conference, we find that in the circumstances of this case it would be manifestly unjust to relieve defendants of an "admission" they have consistently

---

**4.** In fact, plaintiff impliedly admits defendant's *Elrod–Branti* defense when he writes:

> [T]he former position of 'Regional Director' [classified as a trust or confidence position] under the Youth Action Administration became a career position with the official classification of Interagency Coordinator IV and the functional title of Regional Representative.

(Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment at 8).

**5.** *See* Opinion and Order at 3, 6.

**6.** *See* 902 F.2d at 113–14.

**7.** The defendants conceded that in 1985 they had the information to make these arguments

when they write in their Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment, docket number 82:

> When confronted with plaintiff's last career position in [the Office of Youth affairs], at that point in time, [in 1985] any reasonable governmental (sic) official that *objectively* would have analyzed the job description would (sic) ascertained that its inherent duties and responsibilities belonged to a confidential or policy-making position, and thus rendered it insufficient to sustain a reinstatement to career status claim *or, at the least (sic), that there was a reasonable doubt as to if the position was a confidential or career one.*

(Reply at 33) (emphasis in original).

embraced for at least five years.[8]  *Cf.* Fed. R.Civ.P. 16(e).

■■  Pre-trial stipulations of fact are binding against the party that makes them. *Geremia v. First Nat. Bank of Boston,* 653 F.2d 1, 5 (1st Cir.1981). In *Romero Reyes v. Marine Enterprises, Inc.,* 494 F.2d 866 (1st Cir.1974), the First Circuit held that a district court erred in ignoring the stipulations made by defendants regarding plaintiff's occupation. The defendants had admitted in their answer and in a pre-trial stipulation that plaintiff was a longshoreman, but the district court did not give any legal effect to this admission. *Id.* at 868. In this case, in a Pretrial Order submitted on May 29, 1986, in a status questionnaire (filed pursuant to an order of this court) dated September 28, 1987, and in their pleadings before this court and the First Circuit, the defendants admitted that plaintiff was a career employee. Considering that the information of whether the plaintiff had held a career position at the Office of Youth Affairs or whether his appointment was invalid was readily available to the defendants, we find that their failure to exercise due diligence in asserting these arguments is inexcusable.[9]  *Jauregui v. City of Glendale,* 852 F.2d 1128, 1134 (9th Cir.1988) (party who fails to exercise appropriate diligence in challenging factual determinations made in accordance with Rule 16 is bound by them); *Bento v. I.T.O. Corp. of Rhode Island,* 599 F.Supp. 731, 741 n. 12 (D.R.I.1984) (motion by defendants made on the eve of trial to amend answer in order to delete admissions is unfair to the plaintiff and was therefore denied).

In short, defendants had numerous opportunities throughout the development of this litigation to raise the defenses that the position of Interagency Coordinator IV was a confidential one or that plaintiff's appointment was invalid. Their failure to do so amounts to a waiver. *See Canal Ins. Co. v. First General Ins. Co.,* 889 F.2d 604 (5th Cir.1989) (automobile liability insurer's arguments that lessor's policy was void for fraud would not be considered, where insurer stipulated in pretrial order that its policy was in full force and in effect at time of accident). As Judge Torruella has remarked in a different context

> This is not an innocent oversight—it is a conscious waiver of a defense by trial counsel. Defendant should not be allowed to resurrect this defense.... [W]hat we have in this case is pure, unadulterated second guessing by the government defendant—"sandbagging"—which this court should not tolerate, much less excuse.

*Rodriguez,* 808 F.2d at 149 (Torruella, J., dissenting).

■  Alternatively, we find that defendants are precluded by the doctrine of judicial estoppel from asserting these new arguments. Judicial estoppel "applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted." *Patriot Cinemas, Inc. v. General Cinema Corp.,* 834 F.2d 208 (1st Cir.1987). In *Patriot Cinemas,* the plaintiff represented to a Massachusetts state court that it would dismiss a state antitrust count in order to avoid the issuance of a stay order pending the resolution of an appeal in federal court of identical antitrust claims. Subsequently, the plaintiff sought to repudiate its representation to the state court by arguing that the antitrust claims in the federal suit were actually state antitrust claims that should be remanded to the state court. The First

---

**8.** To illustrate, in an answer dated December 19, 1985 to the complaint, the defendants admitted that "[p]laintiff held a career position as Interagency Coordinator IV ..." (Complaint ¶ 25). More than four years later, in a Reply Brief filed before the First Circuit and dated February 8, 1990, the defendants stated: "The only career position that [plaintiff] had previously occupied was at the office of Youth Affairs, at another government (sic) agency." (Reply Brief for Appellant at 4–5).

**9.** Nor can the defendants avail themselves of the argument that the issue of whether a position such as Interagency Coordinator IV was confidential or career was unclear in 1985. *See Ramos–Colón v. Srio. de Comercio,* 112 D.P.R. 514 (1982); *Colón v. CRUV,* 115 D.P.R. 503 (1984).

Circuit found that plaintiff had engaged in "the sort of 'fast and loose' behavior that warrants application of judicial estoppel." 834 F.2d at 212. *See also Smith v. Pinner*, 891 F.2d 784 (10th Cir.1989) (stipulation made by employee that he was ridesharing with supervisor at the time of accident barred employee, under doctrine of judicial estoppel, from denying existence of ridesharing agreement in an action brought against the employer).

▮ We find that the doctrine of judicial estoppel is applicable in the instant case. For over five years, the defendants have admitted as a "fact" that plaintiff held a career position. Furthermore, they have not proffered any reason for their failure to raise these arguments early in the litigation. The posture of this case makes the doctrine of judicial estoppel particularly applicable since the defendants' inconsistent position regarding the classification of plaintiff's position at the Office of Youth Affairs was actually adopted by this court and the First Circuit. *Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703, 716 (9th Cir.1990) (noting that the majority of circuits hold that doctrine of judicial estoppel "is inapplicable unless the inconsistent assertion was actually adopted by the court in the prior litigation.").[10]

## III. SUMMARY JUDGMENT

[10, 11] In determining whether summary judgment is appropriate, the court must view the record in the light most favorable to the party opposing the motion, and indulge all inferences favorable to that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Villanueva v. Wellesley College*, 930 F.2d 124, 127 (1st Cir. 1991). Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir.1989).

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) establishes that the party moving for summary judgment has the initial burden of showing "the absence of a genuine issue concerning any material fact." *Id.* at 159, 90 S.Ct. at 1609. If the movant shows that there is an absence of evidence to support the non-moving party's case, the burden shifts to the non-movant to establish the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. A fact is material

> if, under the applicable substantive law, it may affect the outcome of the case. Furthermore, a dispute is considered genuine only if there is conflicting evidence that requires a trial to resolve the disagreement.

*Ortega–Rosario v. Alvarado–Ortiz*, 917 F.2d 71, 73 (1st Cir.1990).

Applying this standard, and after an extensive review of the record, and according the non-moving party the indulgence required, we find that plaintiff is entitled to partial summary judgment on the due process claim and that he has presented specific facts showing a genuine issue for trial on the first amendment claim. *Medina Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990).

---

10. Finally, we note that our discretion to review the defendants' new arguments may be circumscribed by the law of the case doctrine. As noted earlier, the First Circuit determined that plaintiff held a career position in the Office of Youth Affairs. *Gaztambide–Barbosa v. Torres–Gaztambide*, 902 F.2d 112, 113–14 (1st Cir.1990). The law of the case doctrine provides
    > that issues, once decided, should not be re-opened 'unless the evidence on a subsequent
    
    trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice.'
    *U.S. v. Rivera–Martinez*, 931 F.2d 148, 150 (1st Cir.1991) (citing *White v. Murtha*, 377 F.2d 428, 432 (5th Cir.1967)).

### 1. *Due Process Claim*

In *Gaztambide–Barbosa*, 902 F.2d at 115, the First Circuit held that Section 1350 applied to CRUV. No doubt exists, therefore, that plaintiff could not be dismissed "without due process or for political reasons." *Id.* at 114. As a career employee, plaintiff had a property right to continue in a career position and could only be removed for "good cause, after preferment of charges in writing." *Gierbolini–Colón v. Aponte–Roque*, 666 F.Supp. 334 (D.P.R.1987) (citing 3 L.P.R.A. § 1336(4)), *aff'd*, 848 F.2d 331 (1st Cir.1988).

The due process clause of the U.S. Constitution requires " 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). Plaintiff was dismissed outright without any written explanation or pre-termination hearing. A career employee like plaintiff "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." 470 U.S. at 546, 105 S.Ct. at 1495.

In sum, we find that defendants violated plaintiff's rights under the due process clause and therefore plaintiff is entitled to be reinstated to a position "equal or similar to" the position of Interagency Coordinator IV. 3 L.P.R.A. § 1350.

### 2. *First Amendment Claim*

A factual dispute exists on whether plaintiff's dismissal violated his First Amendment rights.

In order to prove that his dismissal violated the First Amendment, plaintiff "would have [to] prove, at trial, that affiliation with [a political party] was the substantial or motivating factor underlying their dismissals." *Kauffman v. Puerto Rico Telephone Co.*, 841 F.2d 1169, 1172 (1st Cir.1988) (citing *Mt. Healthy City Board of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

Unlike the plaintiffs in *Kauffman*, plaintiff here has established that a genuine factual dispute exists by alleging that he was the only Regional Director of CRUV who was not reinstated by defendants to a career position similar to the one he held. Plaintiff points out that the four other Regional Directors, Arnaldo Jiménez–Fuentes, José Vicente Vázquez, María del Pilar Príncipe and Eulalio Romero–Arroyo, were returned to a career position pursuant to Section 1350 of the Personnel Act. In sum, whether plaintiff was discriminated on the basis of his political belief is a question for trial.

## IV. RELIEF

### 1. *Reinstatement*

Under Puerto Rico law, reinstatement is available as a remedy when a career employee is deprived of property rights without due process. *See, e.g., Lupiañez v. Srio. de Instrucción*, 105 D.P.R. 696 (1977). Similarly, the First Circuit has held that "[o]ne of the remedies available for a political discharge in violation of First Amendment right is reappointment." *Santiago–Negrón v. Castro–Dávila*, 865 F.2d 431, 437 (1st Cir.1989); *Rosario–Torres v. Hernández–Colón*, 889 F.2d 314, 322 (1st Cir.1989) (en banc) (although presumption of reinstatement is not a substantive rule of law, it is a reformulation of the basic principle that reinstatement is an equitable remedy readily available in a Section 1983 action).

We find that Section 1350 mandates that plaintiff be reinstated to a position similar or equal "to the last one he held in the career service." 3 L.P.R.A. § 1350; *Ruiz–Roche v. Lausell*, 848 F.2d 5, 8 (1st Cir. 1988).

### 2. *Damages*

Since the issue of whether plaintiffs' first amendment rights were violated is an issue for trial, we will determine whether plaintiff is entitled to back pay at a hearing after the trial, if necessary. *See Cordero v. de Jesús–Mendez*, 867 F.2d 1, 6–7 (1st Cir.1989) (where issue of liability and compensatory damages may be determined by

the jury, back pay shall also be considered as part of the damages).

3. *Interim Attorney Fees and Rule 11 Sanctions*

Plaintiff's motion for Rule 11 sanctions is hereby DENIED. The parties shall have twenty (20) days from the day of notice of this Opinion and Order to brief the court on the question of whether plaintiff should be awarded interim attorney fees under 42 U.S.C. § 1988. No extension of time shall be granted regarding this matter.

## V. CONCLUSION

Defendants' motion for summary judgment is DENIED. Plaintiff's motion for partial summary judgment is GRANTED as follows:

It is hereby ORDERED that plaintiff shall be reinstated to a position at a government agency similar or equal to the one he occupied in the Office of Youth Affairs.[11]

The clerk shall enter judgment accordingly.

SO ORDERED.

---

**11.** We are well aware that CRUV should have the responsibility for reinstating plaintiff to any of its programs. However, this is not possible since CRUV is scheduled to be shut down shortly.